**IT IS ORDERED as set forth below:**



**Date: July 31, 2025**

_Susan D. Barrett_

United States Bankruptcy Judge
Southern District of Georgia

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 Case |
| | ) | Number 24-10795 |
| JOHN ANTHONY CROSBY, | ) | |
| Debtor. | ) | |
| | ) | |

## OPINION AND ORDER

Before the Court is John Anthony Crosby's ("Debtor's") pro se Motion to Stay Pending Appeal ("Motion to Stay") requesting the "Court grant a stay of all proceedings and orders issued after June 17, 2025, until the United States District Court" renders its decision on appeal.  Dckt. No. 89.  This Court has subject matter jurisdiction, and this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). For the following reasons, the Motion is DENIED.

## FINDINGS OF FACT

1.  Debtor filed his bankruptcy petition on November 4, 2024.  Dckt. No. 1.

1

2. His proposed chapter 13 plan filed November 4, 2024 provides for HSBC Bank USA, N.A., as Indentured Trustee for the Registered Noteholders of Renaissance Home Equity Loan Trust 2007-1 ("HSBC")[1] "to be paid via sale of home, said sale to be consummated within 60 days." Dckt. No. 7 ¶15.

3. On February 20, 2025, HSBC filed a Motion for Relief from the Automatic Stay as to the Debtor ("Motion for Relief") regarding the property commonly known at 5 Charlestowne Dr., Augusta Georgia (the "Property"). Dckt. No. 29.

4. A hearing was set for April 3, 2025 to consider the Motion for Relief. Dckt. No. 31.

5. Contemporaneously with the Motion for Relief, HSBC also filed a Motion for Relief from Co-Debtor Stay ("Motion for Co-Debtor Relief") as to the co-debtor, the Estate of Aree Cash. Dckt. No. 30.

6. The Notice of Motion for Relief from Co-Debtor Stay filed contemporaneously with the Motion for Co-Debtor Relief provided: "If you have legal grounds to oppose the Motion [for Co-Debtor relief], or if you wish the Court to consider your views on the Motion, **you must file** a written request for a hearing with the Clerk of the Bankruptcy Court before the expiration of twenty (20) days from the filing of the Motion." Dckt. No. 30 (emphasis added).

7. The Certificate of Service for the Motion for Co-Debtor Relief shows the co-debtor, the chapter 13 Trustee (Huon Le), and the Debtor were served on March 27, 2025. Dckt. No. 38.

---

[1] Debtor refers to the lender as "PHH Mortgage," which is listed on HSBC's Proof of Claim as the entity to whom all notices should be sent. For ease of reference, the lender is referred to as HSBC throughout this Order.

Case:24-10795-SDB   Doc#:113   Filed:07/31/25   Entered:07/31/25 17:18:54   Page:3 of 19

8. No timely response was filed to the Motion for Co-Debtor Relief, and the order granting relief from the co-debtor stay was entered on June 18, 2025.  Dckt. No. 82.

9. On April 1, 2025, Debtor's counsel filed a Motion to Continue Hearing on the Motion for Relief stating Debtor was unable to attend because he could not afford transportation ("First Continuance Motion").  Dckt. No. 39.

10. Attached to the First Continuance Motion is Debtor's Declaration in Support of the Continuance Motion which includes the following statements:

> I have been transparent about my intent to either short sell the property or surrender it through a deed in lieu of foreclosure—not retain it.  I have never expressed an intention to reaffirm the debt or remain in the property long-term.
>
> . . . .
>
> I am not seeking to avoid resolution.  On the contrary, I have been prepared from the outset to resolve this matter responsibly—either by selling the property to cash-ready buyers or by surrendering it through a deed in lieu of foreclosure, provided that a reasonable relocation incentive be offered to assist with the transition from a property of significant value surrendered without objection.

Dckt. No. 39 ¶¶3, 9.

11.  The next day, April 2, 2025, Debtor filed a pro se Motion for Substitution of Counsel, Request for Continuance, and Notice of Ineffective Representation ("Motion to Substitute") requesting a 30–40 day continuance to allow Debtor to obtain substitute counsel.  Dckt. No. 40 at 4.[2]

12. At the call of the case on April 3, 2025, and based upon the continuance request and other issues, the Motion for Relief was continued until May 5, 2025, affording Debtor more than 30 days to obtain substitute counsel, as requested.  Dckt. No. 43.

---

[2]  Debtor's counsel also filed a Motion to Withdraw as Counsel of Record ("Motion to Withdraw").  Dckt. No. 41.

3

13. The Motion to Substitute and Motion to Withdraw also were set for a hearing on May 5, 2025. Dckt. No. 46.

14. On May 1, 2025, Debtor filed a pro se Motion to Continue Hearing Due to Medical Necessity and Retention of New Counsel ("Second Continuance Motion") requesting a continuance because Debtor had tested positive for Covid, had additional serious medical conditions, and wanted additional time to obtain new counsel.  Dckt. No. 48.

15. After considering the Motion, the Court issued a Notice of Continued Hearing as to "Confirmation, Debtor's Motion to Substitute [Counsel,] and [Counsel's] Motion to Withdraw," continuing the hearing on these matters to May 19, 2025 at 10:30 a.m.  Dckt. No. 50.

16. A separate order was also entered continuing the hearing on the Motion for Relief to May 19 at 10:30 a.m., the same date and time as the hearing on the other matters.  Dckt. No. 51.

17. On May 8, 2025, HSBC's counsel filed a Motion for Continuance requesting the Court reschedule the May 19th hearing to 2:00 p.m. on the 19th, or in the alternative to reschedule the hearing to a different day that same week.  Dckt. No. 55.

18. On May 12, 2025, an order granting HSBC's continuance request was entered, but unfortunately the order failed to clarify the new time/date.  Dckt. No. 56.

19. The Notice of Continued Hearing clearly continued the hearing to May 19, 2025 at 2:00 p.m. but only referenced the hearings on Confirmation, the Motion to Substitute, and the Motion to Withdraw.  Dckt. No. 57.

20. This notice, unfortunately, failed to include the Motion for Relief.  Dckt. No. 57.

21. On May 16, 2025, Debtor filed a pro se Motion to Continue Hearing Date, Permit Video Appearance, and Compel Creditor Cooperation Due to Compounding Medical, Legal, and

Financial Hardships ("Third Continuance Motion") which states Debtor continues to suffer from

Covid and multiple serious medical conditions and:

> [Debtor] **has no intention of retaining the subject property**.
>
> . . . .
>
> [Debtor] has long intended to surrender [the Property] through fair and equitable means . . . . This financial pressure is one of the primary motivations behind the family's decision to relocate to the Dominican Republic . . . .
>
> . . . .
>
> [Debtor] provided his [counsel] with **full documentation and communication history**—including proof that he was **surrendering** the property—in November 2024.
>
> . . . .
>
> The Court's recent directive requiring payment of $600 to [HSBC], coupled with an additional $1,000 demand from another creditor, is financially impossible under [Debtor's] current circumstances.
>
> . . . .
>
> [Debtor] seeks only to:
>
> - Remove his personal belongings and possessions[;]
> - Protect his credit from foreclosure[; and]
> - Relocate with his family to the Dominican Republic[.]
>
> . . . .
>
> [In Conclusion] [Debtor] . . . requests:  1. A continuance of the May 19, 2025 hearing date[,] 2. Permission to appear remotely for all future proceedings[,] 3. Relief from current payment demands and deadlines[, and] 4. Judicial intervention to compel [HSBC] and its counsel to cooperate toward a final resolution.

Dckt. No. 61 ¶¶11, 14, 15, 20, 24, prayer (emphasis in original).

22. After considering the matter, the Court denied the request to continue the hearing but allowed

Debtor to appear telephonically.  Dckt. No. 62.

5

23. At the May 19th call of the case at 2:00 p.m., Debtor appeared telephonically and was given an opportunity to submit his case and evidence.  He testified that he always intended to surrender the Property through a short sale or deed in lieu.[3]  He stated the Property is "grossly underwater"[4] with the outstanding loan balance far exceeding the value of the Property.  He also testified he let the insurance on the Property lapse after he decided to short sell the Property.  He testified no one was living in the house and there is a hole in the roof.  He testified the Property became uninsured after the roof was damaged, but he never submitted a claim on his insurance policy because the homeowner's association or its contractor should be responsible for the roof damage.  He said he did not oppose relief from the stay being granted but does not want a foreclosure on his record and HSBC is refusing to negotiate a short sale with him.  In addition, Debtor wants a "reasonable relocation incentive to be offered to assist with the transition from a property of significant value surrendered without objection."  Dckt. No. 39 ¶9; Dckt. No. 61 ¶26 (offering a "[d]eed-in-lieu of foreclosure, with modest financial consideration to facility moving costs").

24. After considering the matter and arguments presented, the Court orally granted the Motion for Relief.  This order was subsequently memorialized by written order entered May 27, 2025 ("May 27th Order").  Dckt. No. 68.

---

[3]  Debtor has consistently maintained his intent to surrender the Property.  At various times in this Order, the Court refers to "short sale" or "surrender" or "deed in lieu."  The form of the surrender is not relevant to the issues at hand, and therefore, this Order uses the terms interchangeably.

[4]  Debtor has consistently stated HSBC grossly overvalues the Property at $186,000, when comparable homes sell between $145,000 and $165,000.  See Dckt. No. 66, Decl. ¶11.

25. On May 23, 2025, Debtor filed a pro se Motion for Reconsideration of Order Granting Relief from Automatic Stay and Request for Temporary Stay of Foreclosure Proceedings Pending Hearing ("First Motion for Reconsideration") stating:

> He has been battling serious health issues, including Covid and it hindered his ability to obtain new counsel, and it was unjust for the Court to expect Debtor to argue multiple complex issues;
>
> Allowing his counsel to appear at the hearings was improper;
>
> The court has not seen or considered the predatory lending of Fidelity Mortgage[5] and bad-faith servicing of HSBC;
>
> The noticing of the hearing was inadequate and a "procedural ambush;"
>
> Debtor's medical issues resulted in a forced pro se appearance;
>
> His request to be allowed to submit all supporting documents and evidence electronically.

See Dckt. No. 66, ¶¶1, 2, 3, 5, 7, §III.

26. The First Motion for Reconsideration's prayer requested the Court:

1. Vacate the Order entered May 19, 2025, granting relief from the automatic stay;
2. Reinstate the automatic stay protections pending further review;
3. Alternatively, schedule a new hearing to allow proper evidence to be reviewed and heard;
4. Stay all foreclosure proceedings temporarily until this Motion [for Reconsideration] is resolved;
5. Allow the Debtor a 30-60 day window to regain his health; obtain medical clearance, and secure new legal counsel to finalize negotiations with [HSBC];
6. Permit the Debtor to submit all exhibits and evidence electronically for direct judicial review;
7. Acknowledge the Debtor's serious illness, medical hardship and procedural disadvantage as grounds for granting this reconsideration and for failing to participate fully in the May 19 hearing; and
8. Grant such other and further relief as this Court deems just and proper.

---

[5]   Debtor indicates the initial loan, prior to the modification with HSBC, was predatory.  He further contends HSBC has not negotiated in good faith regarding his short sale proposals.

Id. at §V.

27. After considering the First Motion for Reconsideration and reviewing the docket and noticing

issues, the Court granted the First Motion for Reconsideration, vacating the May 27th Order and

continuing the hearing on the Motion for Relief to June 18, 2025.  Dckt. No. 70.  This order

effectively granted all the relief Debtor requested in his First Motion for Reconsideration.  Id.  The

order:  (1) vacated the May 27th Order; (2) noted the stay remained in place pending further Court

Order, effectively staying any foreclosure proceedings; (3) set a new hearing date 26 days after

the date the First Motion for Reconsideration was filed; (4) noted "THIS IS THE LAST

CONTINUANCE"; (5) allowed Debtor to attend telephonically; and (6) allowed Debtor to

electronically submit on or before June 16, 2025 any evidence to a specified Court email address.

28. Debtor failed to submit any documents by the June 16, 2025 deadline.

29. On June 17, 2025, the day before the hearing, Debtor filed an Emergency Motion to Stay

Proceedings Pending Resolution of Representation, Health Accommodation, and Good Faith

Engagement by Creditor; and Request for Judicial Order to Follow Proper Procedural Order

("Fourth Continuance Motion"), stating:

1.  He has been deprived of his Sixth Amendment rights by the failure of the Court to enter an order on withdrawing his counsel;[6]
2.  In accordance with his medical condition and the Americans with Disabilities Act and fundamental due process, he requests accommodations and [the Court to] refrain from requiring him to participate in the proceedings;
3.  He is physically and cognitively incapable to compile and transmit his extensive documentation in this matter;
4.  HSBC's failure to cooperate with him fails to meet due process requirements and is "procedural entrapment."

---

[6]  Debtor now states potential counsel has refused to meet with him while he is still represented.  Dckt. No. 76 at 2.  In previous pleadings, Debtor stated potential counsel would not meet with him remotely and/or he was too ill to meet personally or telephonically.  Dckt. No. 61 ¶10; Dckt. No. 66 ¶1.

Dckt. No. 76.

30. After consideration, the Court denied the Fourth Continuance Motion on June 17, 2025.  Dckt. No. 77.

31. On June 18, 2025, just before the scheduled hearing, Debtor filed another Emergency Motion for Reconsideration of Denial of Continuance Due to Ongoing Medical Crisis and ADA-Protected Condition ("Second Motion for Reconsideration").  Dckt. No. 78.

32. In this motion, Debtor contends the Court's denial of his request for a continuance violated his due process rights and the federal protections afforded him by the Americans with Disabilities Act.  Id. at 2.

33. He again notes he wants to relocate to the Dominican Republic.  Id. at 8.

34. At the call of the case, Debtor failed to appear (telephonically or otherwise) at the June 18th hearing, but his counsel did appear and requested a continuance.

35. HSBC's counsel also appeared and opposed the continuance.

36. After considering the Second Motion for Reconsideration, the Court noted the number of previous continuances and the accommodations that have been provided to Debtor and denied the motion and continuance request.  Dckt. No. 80.

37. The hearing proceeded and HSBC's counsel noted the loan matured in March of 2022.  Proof of Claim #2-2 at 17, 19, 29, 49.

38. HSBC contended relief from stay is appropriate pursuant to 11 U.S.C. §362(d) for cause and because there is no equity in the Property and it is not necessary for Debtor's reorganization.

39. After considering the matter, the Court granted HSBC's Motion for Relief.  Dckt. No. 81.

40. Debtor filed a Notice of Appeal.  Dckt. No. 88.

41. Citing Bankruptcy Rule 8002, Debtor filed a pro se Notice of Appeal of orders "entered June 17 and 18"[7] and states he is appealing:

1. The denial of the Emergency Motion to Stay Proceedings Pending Resolution of Representation, Health Accommodation, and Request for Judicial Order;
2. The denial of the Emergency Motion for Reconsideration Due to Ongoing Medical Crisis and ADA-Protected Condition; [and]
3. The granting of relief from stay without hearing or adequate opportunity for participation, resulting in the removal of legal rights to the subject property.

   This appeal is based upon the multiple errors of law and procedure, including violations of:
   • The Americans with Disabilities Act (ADA)
   • The Due Process Clause of the United States Constitution
   • The right to counsel and proper substitution thereof
   • Judicial misconduct and abuse of discretion.

   Id.

42. Debtor also filed the Motion to Stay Pending Appeal citing Bankruptcy Rule 8007 and stating:

1. The Debtor has demonstrated a likelihood of success on appeal based on clear violations of constitutional due process, failure to grant ADA-protected accommodations, and lack of judicial ruling on the substitution of legal counsel.
2. The denial of medical-based continuance constitutes irreparable harm to the Debtor and impairs the integrity of the judicial process.
3. The balance of equities weighs in favor of a stay, as no party is prejudiced by brief delay for medical recovery.
4. A stay serves the public interest by upholding access to fair adjudication and disability protections.

---

[7] The following orders were entered June 17–18, 2024:
   1. Order Denying the Emergency Motion to Stay Proceedings and Request for Procedural Order (Dckt. Nos. 76, 77);
   2. Order Denying the Motion for Reconsideration (Dckt. Nos. 78, 80);
   3. Order Granting the Motion for Relief (Dckt. Nos. 29, 81); and
   4. Order Granting the Motion for Co-Debtor Relief (Dckt. Nos. 30, 82).

Wherefore, Debtor respectfully requests this Court grant a stay of all proceedings and orders issued after June 17, 2025, until the United States District Court has rendered a decision in the matter on appeal.

Dckt. No. 89.

## CONCLUSIONS OF LAW

Federal Rule of Bankruptcy Procedure 8007 states in pertinent part, "the bankruptcy court may [] suspend or order the continuation of other proceedings in the case, or [] issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest."  Fed. R. Bankr. P. 8007(e).  "[O]rdinarily, a party must move first in the bankruptcy court for . . . a stay of the bankruptcy court's judgment, order, or decree pending appeal . . . ."  Fed R. Bankr. P. 8007(a)(1)(A).

A stay pending appeal is an "extraordinary remedy," and Debtor, as the party seeking the relief, has the burden of proof to show by a preponderance of the evidence:

1) a substantial likelihood that he will prevail on the merits of the appeal;
2) a substantial risk of irreparable harm to Debtor unless the stay is granted;
3) no substantial harm to others from the issuance of the stay; and
4) the public interest will be served by issuing the stay.

Woide v. Fed. Nat'l Mortg. Ass'n (In re Woide), 730 F. App'x 731, 737 (11th Cir. 2018) (citing Touchston v. McDermott, 234 F.3d 1130, 1132 (11th Cir. 2000)); In re Revel AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015)); Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986); In re Moore, No. 20-40309-EJC, 2020 WL 5633081, at *5 (Bankr. S.D. Ga. Aug. 27, 2020).  Generally, the first factor is the most important.  Garcia-Mir, 781 F.2d at 1453.  However, if the party cannot show the court's findings are clearly erroneous, he may obtain a stay if he establishes the other three factors "tend strongly" in his favor.  Robles Antonio v. Barrios Bello, No. 04-12794-GG, 2004 WL 1895123, at *1 (11th Cir. June 10, 2004).  The factors are interrelated and must be balanced.  In re Target Graphics, Inc., 372 B.R. 866, 870 (E.D. Tenn. 2007).

pecially

After considering the matter, the Court finds Debtor has failed to carry his burden and denies the motion for the following reasons:

As to the first element,[8] the Court finds the previous ruling to be well-grounded in law and fact, and not likely to be overturned on appeal.  See Dckt. No. 81.  Pursuant to 11 U.S.C. §362(d), relief from stay is appropriate:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. §362(d).   Without restating the previous order granting relief, the Court finds cause, including lack of adequate protection, exists for granting relief from the stay.  Dckt. No. 81; 11 U.S.C. §362(d)(1).  Debtor acknowledges the Property is grossly underwater in terms of its value to debt ratio, so it is undisputed there is no equity cushion to provide adequate protection.  Furthermore, the Property is uninsured,[9] unoccupied, and has a hole in the roof.  In addition, the loan matured in 2022, and Debtor has failed to pay off the loan.  For these reasons, cause exists to grant relief pursuant to 11 U.S.C. §362(d)(1).

---

[8]  Given the facts and circumstances of this case, there is significant overlap in the rationale for each of the four elements of a stay pending appeal.  In this Order, the Court does not repeat at length its analysis with respect to each of the factors where specific facts and circumstances are analyzed in depth elsewhere, but the rationale applies equally to the analysis for each factor.

[9]  Debtor offered to obtain insurance, but it does not change the fact that the Property was uninsured. Dckt. No. 66 §IV.

These same reasons also support granting relief under 11 U.S.C. §362(d)(2). Undisputedly, there is no equity in the Property. In addition, Debtor has failed to make payments on the loan and intends to surrender the unoccupied Property; therefore, it is not necessary to an effective reorganization.[10] For these reasons, the Court finds Debtor has not established a likelihood of a success on the merits of any 11 U.S.C. §362(d) arguments.

As to his claim that the Court failed to grant him ADA-protected accommodations, the Court finds Debtor also is unlikely to prevail on the merits on this argument. The Court has granted Debtor numerous accommodations. Multiple continuances have been granted for the time periods requested by Debtor. In addition, the Court has allowed Debtor to participate telephonically and submit his documentation electronically. See Dckt. Nos. 62, 74. Therefore, the Court finds Debtor is unlikely to prevail on any argument that he was not provided adequate accommodations. Furthermore, the ADA does not apply to the federal judiciary. See Anders v. South Carolina, No. 2:24-cv-06311-BHH-MGB, 2025 WL 1169191, at *4 (D.S.C. Mar. 31, 2025), report and recommendation adopted, No. 2:24-cv-6311-BHH, 2025 WL 1167492 (D.S.C. Apr. 21, 2025) ("[A] federal court does not fall within the definition of a 'public entity' under the ADA and the ADA therefore does not apply to federal courts.") (discussing Title II of ADA); Wilds v. AKHI LLC, 2022 WL 3904134, at *3 (N.D. Fla. July 29, 2022) ("[F]ederal government buildings are generally exempt from the ADA.") (discussing Title III of ADA).

---

[10] Debtor's proposed plan states "[HSBC] to be paid via sale of home, said sale to be consummated within 60 days." Dckt. No. 7 ¶15. Debtor has failed to consummate a sale of the home to date. The Debtor contends HSBC has not cooperated with such efforts. Dckt. No. 61 ¶12; Dckt. No. 66 §III; Dckt. No. 76 §IV. However, HSBC has no obligation to cooperate, especially when the offer for a short sale is for less than the debt owed and Debtor demands HSBC pay a "reasonable relocation incentive". Dckt. No. 39 ¶9; see generally, 11 U.S.C. §362(d).

The accommodations provided to Debtor comply with the standards applicable to federal courts, and Debtor is unlikely to prevail on this issue.[11]

Debtor also contends organizing and submitting his evidence is too burdensome; however, as the docket and pleadings clearly reflect, he has consistently and timely filed multi-page, organized, coherent pleadings.  While the Court continues to be sympathetic with Debtor's medical issues, Debtor has consistently shown the ability to timely submit comprehensive pleadings and coherent arguments. Furthermore, Debtor has stated numerous times that his counsel has all of the papers.  Debtor has the ability and has been provided ample opportunities to tender any documentation.   Furthermore, additional time will not change the facts or legal analysis in this matter.  For these reasons, the Court does not find it likely that Debtor will prevail on this argument.

Next, the Court also does not find Debtor likely to succeed on his argument that the Court's "lack of judicial ruling on the substitution of legal counsel" is reversible error.  Dckt. No. 89.  On April 2, 2025, Debtor filed the First Continuance Motion, requesting a 30–40 day continuance to obtain substitute counsel.  Dckt. No. 40.  After considering this motion, the hearing was continued more than 30 days.  Dckt. No. 46.  On May 1, 2025, Debtor filed the Second Continuance Motion, requesting additional time to secure new counsel.  Dckt. No. 48.  After considering the Second Continuance Motion, an order was entered continuing the hearing on the Motion for Relief to May 19, 2025.  Dckt. No. 51.  Subsequently, on May 16 and 23, 2025, respectively, Debtor filed the Third Continuance Motion and the First Motion for Reconsideration, requesting additional time because all potential new counsel required in-person meetings, and he was too ill to meet in-person.  See Dckt. Nos. 61, 66.

---

[11] See, e.g., Wilds v. AKHI LLC, 2022 WL 3904134, at *3 (noting Architectural Barriers Act of 1968 applies to federal buildings).

Now, Debtor indicates potential new counsel will not meet because he is currently represented by counsel. Dckt. No. 76 at 2. The Court does not find these arguments likely to succeed on the merits. First, Debtor's initial request for a 30–40 day continuance was granted. The hearing ultimately was held well beyond the requested 40 days. Debtor's second request for a further continuance also was accommodated. Next, in the Court's experience, attorneys are receptive to, and adept at, conducting telephonic client meetings, especially after Covid. In addition, in the Court's experience, substitute counsel is much easier to procure when there can be a smooth transition of information and documentation from existing counsel to new counsel. Debtor has never been prevented from obtaining new counsel or presenting his case. For these reasons, the Court finds the Debtor is unlikely to prevail on the merits on this argument.

As to Debtor's due process and Sixth Amendment Constitutional arguments, the Court finds he has failed to show a likelihood of success on the merits on these arguments. The Supreme Court has stated to satisfy due process, notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present objections." In re McFashion, No. 13-74255-MGD, 2014 WL 3015659, at *5 (Bankr. N.D. Ga, May 23, 2014) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Debtor has been given sufficient notice and opportunity to present his case and objections. His pleadings and conduct clearly show he was aware of the June 18th hearing date and the status of other filed pleadings. He expended significant energy in timely filing requests for continuance and reconsideration but did not attend the June 18th telephonic hearing. Debtor has been afforded due process.

Debtor's Sixth Amendment arguments also are not relevant because Sixth Amendment protections are limited to criminal proceedings, not civil proceedings. In re McFashion, 2014 WL

15

3015659, at \*5 (citing <u>Rothgery v. Gillespie County</u>, 554 U.S. 191 (2008)); <u>see also</u> <u>Mason v. Mobile</u>

<u>Cnty. Cir. Clerk</u>, No. 23-12775, 2024 WL 1803091, at \*3 (11th Cir. Apr. 25, 2024) (per curiam) ("[T]he

Sixth Amendment's rights are inapplicable to civil cases . . . ."); <u>Sullivan v. Sullivan (In re Sullivan)</u>,

455 B.R. 829, 836 (B.A.P. 1st Cir. 2011) ("Specifically, an indigent debtor does not have a right to

appointed counsel in bankruptcy proceedings . . . ."); <u>In re Gherman</u>, 101 B.R. 368, 369 (Bankr. S.D.

Fla. 1989) ("The Sixth Amendment addresses a right to counsel but extends that right only to criminal

and quasi-criminal proceedings.") (internal citations omitted).

As to Debtor's arguments that existing counsel hampered his legal arguments, the Court also

finds Debtor unlikely to succeed on the merits of this argument. First, as previously discussed, Debtor

was afforded the opportunity to obtain replacement counsel. Next, Debtor hired existing counsel, and

given the facts and circumstances of this case, further delay is not merited. If Debtor has legitimate

complaints against existing counsel, there are other avenues available to him to pursue those matters

independent of the issues on appeal. Furthermore, from the documentation and proceedings that the

Court has observed, existing counsel has conducted themselves consistent with their ethical obligations.

Finally, Debtor has always been afforded every opportunity to present his case in full.

As to the second factor, the Court finds there is not a substantial risk of irreparable injury to

Debtor if the stay is not granted.

> The key word in considering the second factor is <u>irreparable</u>. Mere injuries, however
> substantial in terms of money, time and energy expended in the absence of a stay, are
> not enough. The possibility that adequate compensation or other corrective relief will
> be available at a later date, in the ordinary course of litigation, weighs heavily against a
> claim of irreparable harm.

<u>In re Skymark Props. II, LLC</u>, 597 B.R. 619, 624 (Bankr. E.D. Mich. 2019) (quoting <u>Mich. Coal. of</u>

<u>Radioactive Material Users, Inc. v. Griepentrog</u>, 945 F.2d 150, 154 (6th Cir. 1991) (in turn, quoting

16

Sampson v. Murray, 415 U.S. 61, 90 (1974)).  Here, Debtor has always proposed to surrender the unoccupied Property, and there is no equity in the Property.  Given these undisputed facts, adequate compensation or other corrective relief is available should Debtor's claims against HSBC succeed on the merits.  Therefore, the Court finds Debtor has not shown a substantial risk of irreparable injury should the stay not be granted.

As to the third factor, Debtor must establish that a stay pending appeal will not cause substantial harm to other interested parties.  The Property securing HSBC's loan is uninsured, unoccupied, and damaged.  The debt owed matured years ago and far exceeds the value of the Property.  HSBC's risks and losses continue to mount.  For these reasons, the Court finds granting the Motion to Stay will cause HSBC substantial harm and Debtor has failed to satisfy this factor.

Finally, the fourth consideration is whether the stay is in the public interest.  A stay pending appeal would continue to delay HSBC's exercise of its state law foreclosure remedies.  The debt and risk of loss and liability continue to exist and rise.  "There is a public interest in preventing debtors from using the bankruptcy process to unduly delay creditors from collecting on their debts."  In re Moore, No. 20-40309-EJC, 2020 WL 5633081, at *8 (Bankr. S.D. Ga. Aug. 27, 2020) (citing In re Skymark Props. II, LLC, 597 B.R. at 626).  Under the terms of the Bankruptcy Code, HSBC is legally entitled to relief from the stay, and there is a public interest in just and efficient processes and remedies.  Debtor also testified to complaints from a neighbor about the physical state of the Property.  There is a public interest in the general maintenance of property and preventing substantial harm to others when a property continues to be unoccupied and in a state of disrepair.  For these reasons, the Court finds this factor weighs against granting the Motion to Stay.

Next, while not included in Debtor's Notice of Appeal, Debtor's Statement of Issues on Appeal also challenges "whether the [Bankruptcy Court] abused its discretion by granting relief to the Co-Debtor Estate without proper service or notification, and without due process afforded to the [Debtor]." Dckt. No. 91 ¶5. HSBC filed a Motion for Relief from Co-Debtor Stay on February 20, 2025. Dckt. No. 30. The Co-Debtor is listed as the Estate of Aree Cash ("Estate"). Id. In accordance with the Bankruptcy Code and Rules and General Order Number 2022-1, relief from the §1301 co-debtor stay is considered on a negative notice basis with parties afforded an opportunity to object. See generally 11 U.S.C. §102(1) (the phrase "'after notice and a hearing' . . . means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but [] authorizes an act without an actual hearing if such notice is given properly and if [] such a hearing is not requested timely by a party in interest . . . ."); 11 U.S.C. §1301(c)–(d) (in certain instances falling within the parameters of "notice and hearing" of 11 U.S.C. §102(1) and in other instances expressly allowing for a 20 day negative notice period); U.S. Bankr. Court, S.D. Ga., General Order Number 2022-1 (Aug. 25, 2022) (allowing for a 20 day negative notice period);[12] Office of Clerk, U.S. Bankr. Court, S.D. Ga., Appropriate Use of Negative Notice (Aug. 25, 2022) (same).[13] The Notice accompanying the Motion for Co-Debtor Relief provides "[i]f you have legal grounds to oppose the Motion [for Co-Debtor relief], or if you wish the Court to consider your views on the Motion, you **must file a written request for a hearing** with the Clerk of the Bankruptcy Court before the expiration

---

[12]    Available at: https://www.gasb.uscourts.gov/sites/gasb/files/GO-2022.1-Neg-Ntc-Procedures-08252022-EJC-SIGNED.pdf

[13]    Available at: https://www.gasb.uscourts.gov/sites/gasb/files/NegativeNoticeIndexOPs-CLEAN-08252022.pdf

of twenty (20) days from the filing of the Motion." Id. (emphasis added).  The Certificate of Service

shows the Motion for Co-Debtor Relief was duly served on March 27, 2025 on Debtor, the co-debtor,

and the Chapter 13 Trustee.  Dckt. No. 38.  No timely response was filed, and the order granting co-

debtor relief was properly entered on June 18, 2025.  Dckt. No. 82.  For these reasons, and the same

reasons set forth above as to the Motion for Relief, the Court finds Debtor has failed to establish any

of the four factors to merit a stay pending appeal as to the Motion for Co-Debtor Relief.

For the same reasons previously discussed in this Order, the Court finds Debtor has failed to

establish he is entitled to a stay pending appeal of the orders on his motions for reconsideration.  See

also Kellogg v. Schreiber (In re Kellogg), 197 F.3d 1116, 1119 (11th Cir. 1999) ("[A]ppellate court

will reverse denial of continuance only in extreme cases . . . .") (internal quotations omitted); Mekdeci

By & Through Mekdeci v. Merrell Nat'l Lab'ys, a Div. of Richardson-Merrell, Inc., 711 F.2d 1510,

1519 (11th Cir. 1983) ("The disposition of . . . a [continuance] motion lies within the sound discretion

of the trial court.").  The Court has not exceeded its sound discretion and therefore, Debtor's request

for a stay pending appeal of the denial of his motions for reconsideration also is denied.

As stated in previous orders and proceedings, the Court remains sympathetic with Debtor's

medical condition but that does not change its conclusion that Debtor has failed to establish grounds to

stay this matter pending appeal.  Numerous accommodations and continuances have been granted in

this matter, but it does not change the underlying fact that HSBC is entitled to relief from the stay for

the reasons set forth in the previous orders.  Given the facts and circumstances of this case, there are

no legal grounds for relief to be denied.  For these reasons, Debtor's Motion to Stay is ORDERED

DENIED.

**[END OF DOCUMENT]**