**IT IS ORDERED as set forth below:**



Date: February 3, 2026

_____
Susan D. Barrett
United States Bankruptcy Judge
Southern District of Georgia

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 Case |
| | ) | Number 24-10795 |
| JOHN ANTHONY CROSBY, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

### OPINION AND ORDER ON DEBTOR'S EMERGENCY MOTION FOR STAY PENDING APPEAL

Before the Court is John Anthony Crosby's ("Debtor's") pro se Emergency Motion for Stay Pending Appeal ("Emergency Motion to Stay," "Motion to Stay," or "Motion") requesting the Court stay its November 24, 2025 Order denying Debtor's Motion to Extend Time ("Order" or "Order Denying Extension") pending the outcome of his appeal. Dckt. Nos. 174 and 167, respectively. CubeSmart Asset Management, LLC ("CubeSmart") opposes the Motion. Dckt. No. 200. This Court has subject matter jurisdiction, and this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). For the following reasons, the Motion to Stay is ORDERED DENIED.

1

**FINDINGS OF FACT**

1. Debtor filed his chapter 13 case in November of 2024. Dckt. No. 1.

2. Debtor's chapter 13 plan proposes for Debtor to: assume the lease of a storage rental from CubeSmart; pay the prepetition arrearage through the plan; and make his postposition lease payments directly to CubeSmart. Dckt. No. 7 ¶ 5(a)–(b).

3. Debtor's chapter 13 plan has not been confirmed.

4. In September 2025, CubeSmart filed a Motion for Relief from the Automatic Stay, as amended, ("Motion for Relief") regarding the storage unit Debtor rented, which is located in New York. Dckt. No. 138.

5. A hearing was set for October 20, 2025 to consider the Motion for Relief. Dckt. No. 141.

6. On September 30, 2025, Debtor filed an Objection to Amended Motion for Relief from the Automatic Stay ("Objection"), requesting the Court deny the Motion for Relief due to "material inconsistencies in the arrearage amounts stated and the irreparable harm posed to Debtor; or, in the alternative, [c]ontinue the hearing until mid November 2025, to allow the Debtor to cure the arrears in full and resolve this matter without further litigation." Dckt. No. 144 ¶ 5(a)–(b).

7. On the same day, Debtor also requested a continuance because he "is actively arranging to cure the arrears in full by mid November 2025" and "[a] continuance of the hearing will serve the interests of justice by allowing the Debtor to finalize the cure, [and] ensur[e] Movant receives full payment . . . ." Dckt. No. 146 ¶¶ 3–4.

8. CubeSmart filed a response requesting the continuance be denied stating:

    a. The amounts in the Motion were not inconsistent or contradictory; Debtor owes prepetition arrears in the amount of $2,850.00 and postpetition arrears in the amount of $7,048.00, which together total $9,898.00;
    b. Debtor last made a payment to CubeSmart in August of 2024 and his property has remained in the storage unit, resulting in CubeSmart being unable to re-let the unit; and

    c. Debtor has been provided with a "considerable amount of time" to cure the arrearages and has failed to do so.

See Dckt. No. 148 ¶¶ 5–7.

9. Debtor filed a supplemental response and renewed motion to continue, requesting the Court:

    a. Require CubeSmart to file and serve a "sworn, itemized ledger . . . identifying pre-petition and post-petition portions, and stating one exact payoff-through-date total;"
    b. Hold CubeSmart's request for stay relief in abeyance pending that reconciliation;
    c. Grant a short continuance of the October 20 hearing to permit reconciliation and voluntary cure;
    d. Authorize Debtor, upon receipt of the reconciled figure, to tender cure directly to CubeSmart by mid-November 2025; and
    e. Alternatively, allow Debtor to resume current monthly payments immediately and remit the reconciled arrears on a short schedule.

See Dckt. No. 149, at 4.

10. The Chapter 13 Trustee ("Trustee") filed a response taking no position on the Motion for Relief or Debtor's objections, but "simply want[ed] to bring to the Court's attention the potential that an artificial intelligence program may have been used in the preparation of Debtor's Supplemental Response which may have provided hallucinated holdings and quotations from actual cases" and requested to be heard on the matter. Dckt. No. 152, at 2–3.

11. CubeSmart filed an affidavit in support of its Motion for Relief and attached its billing history reflecting a $9,898.00 balance. Dckt. No. 153, at 17–27.

12. The morning of the October 20, 2025 hearing, Debtor filed additional pleadings "intended to clarify the Debtor's good-faith request for a brief continuance . . . to permit time to cure both the CubeSmart arrearage and any remaining Chapter 13 plan-payment arrearage in full by mid-November 2025." Dckt. No. 155, at 1.

3

13. At the October 20, 2025 hearing, counsel for CubeSmart appeared in person and Debtor appeared telephonically, representing himself.[1] Debtor stated he had spoken with CubeSmart's counsel about paying the arrearage in full by the middle of November. The Court asked Debtor whether he could pay by November 15, and Debtor answered yes, adding that the latest he could pay was November 25. After discussion, all parties agreed to the following terms: Debtor would pay CubeSmart $10,000.00 on or before November 25; in the event Debtor failed to make this payment timely, CubeSmart could file an affidavit of default and Debtor would be allowed ten days to respond disputing the fact of payment default; in the event Debtor failed to timely file "a counter-affidavit . . . disputing the <u>fact</u> of default, an order [would] be entered lifting the automatic stay, without further motion, notice or hearing" and the provisions of Federal Rule of Bankruptcy Procedure 4001(a)(4) would be waived. Dckt. No. 163, at 2–3 (emphasis in original). The Court also clearly informed Debtor at the hearing that relief from the automatic stay would be granted if Debtor failed to make the payment by November 25, and that his only defense was that payment had in fact been made but was not properly credited.

14. The Court entered an order with these terms on November 14, 2025. ("Strict Compliance Order"). Dckt. No. 163.

15. On November 21, 2025, Debtor filed a Motion to Extend Time to Satisfy Payment Requirement ("Motion to Extend Time"), stating:

Upon reviewing the Order, [Debtor] immediately recognized that [the] provisions align with what [Debtor] genuinely understood during the hearing . . . . Regarding the payment deadline, [Debtor] explained in court that [his] primary source of the $10,000 payment would be funds owed to [him] by [his] sister, Monique A. Harrington, from her personal injury settlement . . . . [which] involves a physical two-party check . . . at the attorney's office in Michigan. Earlier this week, she informed [him] . . . she cannot

---

[1] Debtor's counsel also appeared at the hearing to offer assistance to Debtor, if needed. <u>See generally</u> Dckt. No. 113, at 14–16 for background. During the course of this case, Debtor has filed multiple motions to be allowed to appear virtually at hearings or to continue proceedings due to ongoing health concerns. <u>See generally</u> Dckt. Nos. 48, 61, 76, 78.

travel to Michigan until December 7th-8th . . . . Immediately upon learning this, [Debtor] acted responsibly and secured a secondary source of funds . . . . the transaction cannot close until shortly after Thanksgiving.

Dckt. No. 165, at 1–2.

16. Debtor requested the deadline for him to make the $10,000 payment be extended through December 15, 2025.  Id. at 4.

17. CubeSmart filed a Brief in Opposition to the Motion to Extend Time.  Dckt. No. 166.

18. After considering Debtor's Motion to Extend Time and the matter, the Court entered its order providing: "[h]aving been read and considered, Debtor's Motion [to Extend Time to tender payment] is ORDERED DENIED."  Dckt. No. 167.

19. Thereafter, CubeSmart filed an Affidavit of Default asserting that Debtor failed to timely make the payment as required by the terms of the Strict Compliance Order.  Dckt. No. 169.

20. Debtor filed a Notice of Appeal of the Court's Order Denying Extension and this Emergency Motion to Stay, as well as numerous other pleadings.  Dckt. Nos. 173, 174, 179–182.

## CONCLUSIONS OF LAW[2]

Debtor's Statement of Issues on Appeal for reversible error include:  (1) the Order Denying Extension is conclusory and without findings of fact, recitation of legal standard; or explanation of how the Court evaluated sworn evidence in violation of Federal Rule of Civil Procedure 52(a);[3] (2) the Court failed to address uncontroverted evidence and improperly accepted material mischaracterizations; (3) the Court denied Debtor due process; and (4) numerous other issues.  Dckt.

---

[2]  The Court is entering its Report and Recommendation on Debtor's in forma pauperis application contemporaneously with this order and incorporates those findings and conclusion into this order.

[3]  Made applicable to bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 7052 and 9014(a).

5

No. 176.  Debtor also filed this Emergency Motion to Stay the proceedings pending the outcome of his appeal.  Dckt. No. 174.

Federal Rule of Bankruptcy Procedure 8007 addresses stays pending appeal and states in pertinent part, "the bankruptcy court may [] suspend or order the continuation of other proceedings in the case, or [] issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest."  Fed. R. Bankr. P. 8007(e).  "[O]rdinarily, a party must move first in the bankruptcy court for . . . a stay of the bankruptcy court's judgment, order, or decree pending appeal . . . ."  Fed. R. Bankr. P. 8007(a)(1)(A).

A stay pending appeal is an "extraordinary remedy," and Debtor, as the party seeking relief, has the burden of proof to show by a preponderance of the evidence:

1) a substantial likelihood that he will prevail on the merits of the appeal;
2) a substantial risk of irreparable harm to Debtor unless the stay is granted;
3) no substantial harm to others from the issuance of the stay; and
4) the public interest will be served by issuing the stay.

Woide v. Fed. Nat'l Mortg. Ass'n (In re Woide), 730 F. App'x 731, 737 (11th Cir. 2018) (citing Touchston v. McDermott, 234 F.3d 1130, 1132 (11th Cir. 2000)); In re Revel AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015); Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986); Georgia United Credit Union v. Moore (In re Moore), No. 20-40309-EJC, 2020 WL 5633081, at *4–5 (Bankr. S.D. Ga. Aug. 27, 2020).  Generally, the first factor is the most important.  Garcia-Mir, 781 F.2d at 1453.  However, if the party cannot show the court's findings are clearly erroneous, he may obtain a stay if he establishes the other three factors "tend strongly" in his favor.  Robles Antonio v. Barrios Bello, No. 04-12794-GG, 2004 WL 1895123, at *1 (11th Cir. June 10, 2004).  The factors are interrelated and must be balanced.  In re Target Graphics, Inc., 372 B.R. 866, 870 (E.D. Tenn. 2007).

After considering the matter, the Court finds Debtor has failed to carry his burden and denies the Emergency Motion to Stay for the following reasons:

As to the first factor, Debtor has failed to show a substantial likelihood that he will prevail on the merits of the appeal both from a procedural and substantive perspective. Procedurally, the Order Denying Extension is a non-final, interlocutory order and requires leave of court to appeal. 28 U.S.C. §158(a)(3) ("The district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from . . . interlocutory orders and decrees.").[4] "[A]n interlocutory order is one that 'does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" Steffen v. Menchise (In re Steffan), 500 F. App'x 877, 879 (11th Cir. 2012) (quoting Stewart v. Kutner (In re Kutner), 656 F.2d 1107, 1110–11 (5th Cir. 1981)). The Order Denying Extension is not a final order and therefore may not be appealed without leave of court. See Bullard v. Blue Hills Bank, 575 U.S. 496, 501, 505 (2015) ("The concept of finality cannot stretch to cover, for example, an order resolving a disputed request for an extension of time."). The Bankruptcy Court deems it unlikely the District Court will grant leave to appeal this interlocutory order denying Debtor's request for an extension of time.

As noted in In re McKenzie:

Courts have adopted the standard of 28 U.S.C. §1292(b), which governs the appeal of an interlocutory order from a district court to a court of appeals, when reviewing requests for leave to appeal an interlocutory order issued by a bankruptcy court. Under §1292, an interlocutory appeal is appropriate when the appealed order involves a controlling question of law for which there is substantial ground for difference of opinion and the immediate resolution of the issue will materially advance the ultimate termination of the litigation . . . . Although it is not the bankruptcy court's decision to grant leave to appeal, the Court deems it unlikely that the District Court will grant leave to appeal the Order because the appealed order does not satisfy the unique standard of 28 U.S.C. §1292(b).

---

[4] Debtor filed a notice of appeal but failed to include a motion for leave to appeal. See Dckt. No. 173. However, the District Court may "treat the notice of appeal as a motion for leave to appeal and grant or deny it; or [] order the appellant to file a motion for leave to appeal within 14 days after the order has been entered—unless the order provides otherwise." Fed. R. Bankr. P. 8004(d).

In re McKenzie, No. A09-78963-PWB, 2009 WL 6499259, at *2 (Bankr. N.D. Ga. 2009) (citations omitted). In this matter, there are no controlling questions of law or other grounds to grant any request for an interlocutory appeal.

The Court also finds it unlikely that that Debtor will prevail on the merits of the appeal. A court's decision to grant or deny a motion to extend time is discretionary. Pursuant to Federal Rule of Bankruptcy Procedure 9006(b), "when . . . a court order requires or allows an act to be performed at or within a specified period . . . . the court **may**—at any time and for cause—extend the time to act if [] with or without a motion or notice, a request to extend is made before the period (or a previously extended period) expires . . . ." Fed. R. Bankr. P. 9006(b)(1)(A) (emphasis added); see 10A Collier on Bankruptcy ¶ 9006.06 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Rule 9006(b)(1) requires a party to show some cause for an order enlarging a period of time . . . . some justification for the enlargement seems to be required. The court **may in its discretion** grant or deny the motion . . . . The requirement of cause should be taken seriously and proceedings not delayed without reason.") (emphasis added).

In this case, Debtor agreed to the terms of the Strict Compliance Order at the October hearing, and despite his assertions that he did not know of the entry of the Strict Compliance Order until November 20, the payment terms set and agreed to at the October hearing did not change.[5] Under the terms of the order, Debtor was required to pay CubeSmart $10,000.00 on or before November 25; in the event Debtor failed to make this payment timely, CubeSmart could file an affidavit of default and Debtor would be allowed ten days to respond disputing the fact of payment default; in the event Debtor

---

[5] At the conclusion of the October hearing, CubeSmart was instructed to work with Debtor to submit a Consent Order containing the terms agreed to at the hearing. Ultimately, the Court drafted and entered the Strict Compliance Order in accordance with the agreed-upon terms. See Dckt. Nos. 163, 165.

8

failed to timely file "a counter-affidavit . . . disputing the <u>fact</u> of default, an order [would] be entered lifting the automatic stay granted without further motion, notice or hearing." Dckt. No. 163 (emphasis in original). Debtor acknowledges the terms of the Strict Compliance Order "align with what [he] genuinely understood at the hearing." Dckt. No. 165, at 1. This case has a long history of continuances, and having considered the various factors, the Court duly determined cause did not exist to grant a continuance.

In addition, contrary to Debtor's assertions, the Court was not required to issue detailed findings of fact or conclusions, especially in light of the language in the Strict Compliance Order providing that relief would be granted "without further motion, notice or hearing." Dckt. No. 163. Pursuant to Federal Rule of Civil Procedure 52(a)(3),[6] the Bankruptcy Court "is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, any other motion." Fed. R. Civ. P. 52(a)(3). There is no rule requiring the Court to issue findings of fact or conclusions of law when considering a request for an extension of time.

> In the bankruptcy context, findings are required for Rule 41(b)[7] motions but bankruptcy courts enjoy broad discretion in deciding whether it is necessary to issue findings and conclusions in deciding other motions. In the interest of "preserving the sanity of bankruptcy judges," bankruptcy courts follow the Rule 52(a)(3) exceptions in practice . . . . In general, bankruptcy appellate panels remand for findings only if "the record does not enable [them] to ascertain the basis for the bankruptcy judge's decision."

9C <u>Wright & Miller's Federal Practice & Procedure</u> §2574 (3d ed. 2025) (footnotes omitted). There was no reason to issue findings of fact or conclusions of law when deciding Debtor's Motion to Extend Time. The grounds included in the motion on its face did not comport with the terms of the Strict Compliance Order for an extension, and the request was duly considered and denied. For these reasons, the Court finds there is not a substantial likelihood that Debtor will prevail on the merits of his appeal.

---

[6] Made applicable by Federal Rules of Bankruptcy Procedure 7052 and 9014(a).

[7] Rule 41(b) is not applicable in the current matter.

9

Next, the Court finds there is not a substantial risk of irreparable injury to Debtor if the stay is not granted.

> [T]he key word in considering the second factor is <u>irreparable</u>. Mere injuries, however substantial in terms of money, time and energy expended in the absence of a stay, are not enough. The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

<u>In re Skymark Props. II, LLC</u>, 597 B.R. 619, 624 (Bankr. E.D. Mich. 2019) (quoting <u>Mich. Coal of Radioactive Material Users, Inc. v. Griepentrog</u>, 945 F.2d 150, 154 (6th Cir. 1991) (in turn, quoting <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974)). This appeal involves and order denying Debtor's request for an extension, not an order granting relief. Even if the Court considers Debtor's underlying arguments regarding relief, it is important to note that relief from the §362 stay merely ends the bankruptcy court's involvement in this matter. CubeSmart would still be required to pursue its nonbankruptcy rights in order to dispossess Debtor and regain access; and Debtor would still retain all his rights in those nonbankruptcy proceedings. There is no substantial risk of irreparable harm to Debtor if the stay is not granted. Finally, to the extent there is substantial risk of irreparable harm, the other facts outweigh this risk sufficiently to deny the stay.

Next, Debtor must establish a stay pending appeal will not cause substantial harm to other interested parties. By his own admission, the terms of the Strict Compliance Order "align with what [Debtor] genuinely understood during the hearing." Dckt. No. 165, at 1. Also, by his own admission, Debtor has not made a payment to CubeSmart in over a year. Debtor clearly agreed to the November 25 payment date. The storage unit has no equity. It is not necessary for Debtor's reorganization. All the while, CubeSmart's debt continues to rise, and it is unable to re-let the unit. Every day without payment increases CubeSmart's loss and harm. For these reasons, the Court finds granting the Emergency Motion to Stay will cause CubeSmart substantial harm, and Debtor has failed to satisfy this factor.

Finally, Debtor must establish the stay is in the public interest. As discussed above, a stay pending appeal would continue to delay CubeSmart's exercise of its state law foreclosure remedies. Its losses continue to exist and rise. Given the facts of this case and the nature of this appeal, the Court finds Debtor's conduct to be an abuse of process. "[T]here is a public interest in preventing debtors from using the bankruptcy process to unduly delay creditors from collecting on their [debts]." In re Moore, 2020 WL 5633081, at *8 (citing In re Skymark Props. II, LLC, 597 B.R. at 626) (alteration in original). Debtor was delinquent pre-petition. He filed this bankruptcy in 2024 and has failed to make any postpetition payments to CubeSmart. Debtor's many personal challenges do not abrogate his obligations to make payments while continuing to enjoy the protection of the automatic stay. Under the terms of the Bankruptcy Code, CubeSmart is legally entitled to relief from the stay, and there is a public interest in just and efficient processes and remedies.

As stated in previous orders and proceedings, the Court remains sympathetic with Debtor's circumstances, but that does not change its conclusion that Debtor has failed to establish grounds to stay this matter pending appeal. Given the facts and circumstances of this case, the Court finds Debtor has failed to carry his burden and the Motion to Stay is ORDERED DENIED.

**[END OF DOCUMENT]**